UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


RICKY LYNN EDWARDS )
 )
v. ) NO. 2:12-CV-384
 )
CSX TRANSPORTATION, INC. )

## MEMORANDUM AND ORDER

The procedural path of this case has been protracted: a motion for summary judgment; that motion granted; an appeal, and a reversal of the grant of summary judgment; a second motion for summary judgment; a denial of that second motion for summary judgment; a motion to reconsider that denial; and - now - a grant of that motion to reconsider, doc. 82, and a grant of the second motion for summary judgment, doc. 64.

As an initial matter, the court is perplexed why defendant did not raise in its first motion for summary judgment the issue it now raises in its second. The basis for dismissal argued in the second motion for summary judgment is no less important, and likely more important, than that raised in defendant's first motion for summary judgment. It would have been more efficient for all concerned to have raised both issues simultaneously. Had it done so, this case likely would be over; the bifurcation of potentially dispositive issues in this manner has prolonged the case.

Even though defendant did not waive the arguments upon which it now relies by failing to advance them in its first motion for summary judgment, the court toyed for a time

with the notion of denying the motion to reconsider and then addressing the matter raised in the second motion for summary judgment during or after the trial. But upon further consideration of defendant's second motion for summary judgment, and coming to the conclusion that the undisputed facts require a dismissal of this suit, the court realized that postponing a ruling which ultimately would have to be made would accomplish nothing but forcing upon the parties (and this court) a needless trial.

No new facts, disputed or undisputed, are raised in the defendant's second motion for summary judgment. In other words, the facts remain as they always were, as follows:

On May 28, 2012, defendant was a locomotive engineer for the Railroad. That day he was assigned the task of operating a train consisting of two locomotives and perhaps 30 cars from Bostic, North Carolina to Erwin, Tennessee. When he reported for work, he already was nauseated.

The lead locomotive, i.e., the one in front from which the engineer operated the train, was No. 823. The train, i.e., locomotive No. 823, the trailing locomotive, and the thirty or so cars, had left Hamlet, North Carolina earlier that day, manned by another crew. It was plaintiff's responsibility, along with the conductor, Mr. McClain, to bring the train from Bostic, North Carolina to Erwin, Tennessee.

49 C.F.R. § 229.21 requires that each locomotive shall be inspected at least once during each calendar day.[1] Thus, two successive daily inspections conceivably could be

---

[1] It should be noted that the regulation refers specifically to a *calendar day*, as opposed to a 24-hour day.

more than 24 hours apart. For example, a daily inspection occurring at 9:00 a.m. on Wednesday could be followed by an inspection at 6:00 p.m. on Thursday; the Thursday inspection, although more than 24 hours from the previous inspection, nevertheless is in the following calendar day.

Locomotive No. 823 had been inspected the day before as required by 49 C.F.R. § 229.21. That report indicated that the toilet on No. 823 had no defects, and that it was cleaned and sanitized.[2]

Both 49 C.F.R. § 229.137 and 49 C.F.R. 229.139 require locomotives to be equipped with a "sanitation compartment," which is nothing but a closet toilet. Both regulations specifically require the sanitation compartments to be "sanitary," although § 229.137 goes into much more detail than does § 229.139. These toilet compartments are somewhat similar to a portable toilet often seen at outdoor events. Waste is flushed from the toilet with a blue-colored disinfectant liquid, all of which flows into a holding tank which is emptied later. Part 229 of 49 C.F.R. defines "sanitary" and "unsanitary." The definitions are complimentary, and referring to the definition for "unsanitary" in § 229.5 will suffice for purposes of this opinion:

> *Unsanitary* means having any condition in which any significant amount of filth, trash, or human waste is present in such a manner that a reasonable person would believe that the condition might constitute a health hazard; or strong, persistent, chemical or human waste odors sufficient to deter use of the facility, or give rise to a reasonable concern with respect to

---

[2] Doc. 64-2.

> exposure to hazardous fumes. Such conditions include, but are not limited to, a toilet bowl filled with human waste, soiled toilet paper, or other products used in the toilet compartment, that are present due to a defective toilet facility that will not flush or otherwise remove waste; visible human waste residue on the floor or toilet seat that is present due to a toilet that overflowed; an accumulation of soiled paper towels or soiled toilet paper on the floor, toilet facility, or sink; an accumulation of visible dirt or human waste on the floor, toilet facility, or sink; and strong persistent chemical or human waste odors in the compartment.

As plaintiff climbed aboard No. 823 to begin his work day, he had to walk by the toilet compartment. The door was open, and he noticed a strong odor of human waste and chemicals. He looked into the compartment and saw that the bowl contained human waste, and the seat and back were splattered with urine and blue chemical. It was so nasty, so he testified during his deposition, that he did not want to flush the toilet without wearing rubber gloves. Other than spraying disinfectant into the compartment, plaintiff did not do anything else, nor did he say anything about the compartment to any other representative of the Railroad.

Plaintiff took his seat in the cab of the locomotive and commenced his run. Approximately half-way to Erwin, he stopped his train near Poplar, North Carolina to await the passing of another train. While waiting, plaintiff's nausea suddenly grew worse, and he realized he was going to quickly vomit. He got up from his seat and went outside to the catwalk in order to vomit, disdaining the toilet because of its nasty condition. As already described, the second time he vomited he pitched over the railing and was badly hurt.

In the first Memorandum Opinion, this court attempted to explain why the railroad

4

could not be responsible for the plaintiff's injuries under these undisputed facts. Admittedly, this court did so inartfully and inadequately, couching the discussion in terms of the plaintiff's affirmative responsibilities, as opposed to discussing what duty owing the plaintiff the railroad breached. As mentioned earlier in this opinion, it was the defendant's failure to directly raise the issue it now raises that put the court on the wrong track, so to speak. In any event, the court's original discussion assumed that (1) the bathroom was nasty, and (2) that the nasty bathroom was negligence *per se*. In light of the arguments raised by defendant in its second motion for summary judgment, the latter conclusion - *viz*, that the nasty bathroom was negligence *per se* - is flatly wrong, at least under the facts of this case.

As defendant states, it defies common sense that a railroad is strictly liable for any harm caused by a filthy bathroom, regardless of when or how it became filthy. Such a holding would mean that a railroad, in order to avoid absolute liability on account of a nasty bathroom, would have to hire a "permanent latrine officer" as an additional crew member who stands ready with all necessary cleaning materials and disinfectants to clean the bathroom, literally upon a moment's notice. For example, if the toilet was fouled by one crew member while the locomotive was in motion, far from a means to clean it, and then another crew member avoids using it on that account and is injured as a result, then the railroad would be strictly liable. And if the railroad is liable for an "in transit" condition caused *by a fellow crew member*, why would the railroad not also be strictly responsible if the toilet was fouled by the person who later avoids using it and is injured as a result, *i.e.*, the plaintiff himself? In other words, if a nasty toilet is negligence *per se*, without more, what

does it matter that it was made nasty by the person who was harmed as a result? But, as we all know, commonsense is not necessarily a consistent thread in laws and regulations.

The dispositive questions in this case can be stated as follows: (1) is a railroad's responsibility to maintain a locomotive toilet in a clean and sanitary condition a literal minute-to-minute obligation; or (2) is a railroad's responsibility satisfied if the toilet is cleaned and sanitized at some periodic interval?

The first alternative, in the real world, would be an impossibility unless the crew operating the train at any given time had the additional responsibility to clean the toilet. As for the second alternative, another question arises: is there a regulation which unequivocally and specifically requires the toilet compartment to be inspected at some periodic interval? That question can be answered quickly; there is no single regulation that *directly* so requires. But when all the applicable regulations are read together, and when the regulatory history is consulted, it is clear that a railroad's responsibility to provide a sanitary toilet is triggered by what is found during the daily inspection.

49 C.F.R. § 229.21(a) requires that locomotives be inspected "at least once during each calendar day." It says nothing about inspecting the toilet specifically. But 49 C.F.R. § 229.137, which concerns the toilet compartment, reads as follows:

> (c) Defective, unsanitary toilet facility; prohibition in lead position. Except as provided in paragraphs (c)(1) through (5) of this section, if the railroad determines *during the daily inspection required by § 229.21*[3] that a locomotive toilet facility is defective or is unsanitary, or both, the

---

[3] Italics supplied.

6

railroad shall not use the locomotive in the lead position. The railroad may continue to use a lead locomotive with a toilet facility that is defective or unsanitary as of the daily inspection only where all of the following conditions are met:

>(1) The unsanitary or defective condition is discovered at a location where there are no other suitable locomotives available for use, *i.e.*, where it is not possible to switch another locomotive into the lead position, or the location is not equipped to clean the sanitation compartment if unsanitary or repair the toilet facility if defective;
>
>(2) The locomotive, while noncompliant, did not pass through a location where it could have been cleaned if unsanitary repaired if defective, or switched with another compliant locomotive, since its last daily inspection required by this part.
>
>(3) Upon reasonable request of a locomotive crewmember operating a locomotive with a defective or unsanitary toilet facility, the railroad arranges for access to a toilet facility outside the locomotive that meets otherwise applicable sanitation standards;
>
>(4) If the sanitation compartment is unsanitary, the sanitation compartment door shall be closed and adequate ventilation shall be provided in the cab so that it is habitable; and
>
>(5) The locomotive shall not continue in service in the lead position beyond a location where the defective or unsanitary condition can be corrected or replaced with another compliant locomotive, or the next daily inspection required by this part, whichever occurs first.

(d)  Defective, unsanitary toilet facility; use in trailing position. If the railroad determines during the daily inspection required by § 229.21 that a locomotive toilet facility is defective or is unsanitary, or both, the railroad may use the locomotive in trailing position. If the railroad places the locomotive in trailing position, they shall not haul employees in the unit unless the sanitation compartment is made sanitary prior to occupancy. If the toilet facility is defective and the unit becomes occupied, the railroad shall clearly mark the

7

defective toilet facility as unavailable for use.

The railroad points out that the Federal Railroad Administration, after it adopted the Locomotive Cab Sanitation Standard in 2002, contemplated that providing a sanitary toilet compartment as required by 49 C.F.R. § 229.137 would impose no real burden upon a railroad because that toilet compartment would be inspected and if necessary cleaned *during the calendar day inspection:*

> The Working Group and FRA generally accept that immaculate conditions cannot be expected, anymore than one would expect such conditions in a public rest room in an airport or office building. However, sanitation compartments are expected to be clean and orderly following periodic servicing and cleaning. *Since the duty to remedy an unsanitary condition arises only at the daily inspection*, it is particularly appropriate to specify a standard that describes conditions most people would find unacceptable.[4]

Plaintiff's argument is straightforward; he says that § 229.139 requires a sanitary toilet, and that the defendant is asking this court to inappropriately graft upon that regulation a "qualifier" that the railroad's obligation to provide a sanitary toilet is "determined at the time of the daily inspection."

Court's often are criticized for "judicially leglislating," and judges are excoriated for substituting their opinion for what is "right" in any given case for what the legislature or regulatory authority has enacted. That most definitely is not what is being done here. 49 C.F.R. § 229.137 cannot and should not be read in isolation, ignoring every other pertinent regulation. Section 229.137(c) and (d) refer to inspecting the toilet compartment at the time

---

[4] 67 Fed Reg 16037, italics supplied.

of the daily inspection. It is beyond any reasonable argument that prior to adopting the toilet rules the Federal Railroad Administration contemplated that the railroad's obligation would be satisfied if it inspected and cleaned the toilet compartment at the time of the daily inspection. And then there is the final, and admittedly least important, consideration: common sense. To hold that the railroad must furnish a sanitary toilet every minute places a burden upon a railroad which is not merely difficult to fulfill, it is impossible, unless of course an on-board crewmember is charged with the responsibility of inspecting the restroom after each use and then immediately cleaning it, if necessary. That requirement, obviously, would fly squarely in the face of the regulatory history.

And then perhaps the penultimate question: what is the effect of subparts 1-5 of § 229.137(c)? Section (c) provides that a locomotive with an unsanitary toilet discovered *during the daily inspection* is not to be used in the lead position. Subparts 1-5 provide *exceptions* to the requirement that a locomotive be removed from the lead position if it has an unsanitary toilet. Subparts 1-5 of subsection (c) do not alter the clear intent that the toilet's condition is to be determined at the daily inspection, and they have nothing to do with a condition which arises after that daily inspection. And even if one or more of these subparts did impose another obligation on a railroad to clean the toilets for an unsanitary condition that arose en route, who is to notify the railroad of the non-compliant condition? In short, no one; the court of appeals has said that the plaintiff, as a engineer, has no such responsibility. And, to repeat, the regulatory history unequivocally indicates that the Federal Railroad Administration contemplated that an unsanitary condition that arises during transit

will impose no burden until the next daily inspection: "En route failures that occur after the daily inspection impose no burden on a railroad, until the next daily inspection is due." 67 Fed Reg 16043.

Lastly, it is undisputed that Locomotive No. 823 was inspected on May 27, 2012, at 2:00 p.m., and that its toilet compartment was functional and sanitized.[5] Plaintiff suffered his fall at 6:15 p.m. on May 28, 26 hours and 15 minutes after the previous day's inspection. But as noted on pages 2 and 3 of this opinion, § 229.21 requires an inspection every *calendar* day, not every solar day; thus, the railroad had almost six hours remaining to perform the May 28 daily inspection.

The toilet was nasty, but when the pertinent regulations are read together and in context, that nasty toilet did not constitute negligence *per se* since the railroad breached no regulatory duty under the Locomotive Inspection Act.

Defendant's motion for reconsideration, doc. 82, is **GRANTED**.

Defendant's motion for summary judgment, doc. 64, is **GRANTED**. Plaintiff's suit will be dismissed with prejudice. A separate judgment will be filed.

SO ORDERED:

                                                s/ Dennis H. Inman
                                          United States Magistrate Judge

---

[5] Doc. 64-2.